Our next case is Corporation v. AD-II Engineering Mr. Brayton. Good morning, Your Honors. The judgment of the District Court should be reversed because there is no genuine issue of material fact over whether or not Claims 16 and 27 of SRAM's 291 patent are anticipated. SRAM specifically admitted that the Japanese reference discloses all of the structural limitations of Independent Claim 16 in its February 15, 2007 response to a statement of material facts that appears at pages 3393 and 3394 of the Joint Appendix. With respect to the method steps of Independent Claim 16, SRAM's mechanical engineering expert, Dr. Sturges, admitted in his declaration of September 24, 2004, that the device disclosed in the Japanese reference performs the method steps of the claim as construed according to the literal meaning of those words. Paragraph 26 of his declaration, which appears at page 3434 of the Joint Appendix. Now the claim term is specifically rotating to take up the lost motion. Is there any suggestion that the Japanese reference might be doing something other than rotating and thus not anticipate? No, there is not, Your Honor. Dr. Sturges said in his declaration cumulative lost motion would have been present in any device constructed in accordance with the disclosure of Foster 171 or JP 682, and in order for such a device to shift gears it would have had to remove the lost motion. Paragraph 25 of his declaration on the previous page, 3433, confirms that in order to shift gears the Japanese reference device merely had to be over shifted, or in his words rotated beyond the click. Shifters constructed using the type of mechanism disclosed in JP 682 often had to be clicked repeatedly or rotated beyond the click in order to move the derailleur at least this distance and to effect a shift. Thus the Japanese reference anticipates claim 16. Claim 27, which depends from independent claim 16, adds the additional limitation of the performance of a series of indexed down shifts. Again, paragraph 25 of Dr. Sturges' declaration characterizes the device disclosed in the Japanese reference as a shift actuator of a ball and detent system. Now the Patent Office had the Japanese reference before them and nonetheless found no instance of anticipation? That's not quite correct, Your Honor. The Patent Office, in its first office action in the third re-examination, rejected claim 16 and claim 27 as anticipated by the Japanese reference. It was only later in the third re-examination, after SRAM had reached an agreement with the patent examiner, to construe independent claim 16 as limited to precision index shifting, that the Patent Office allowed claims 16 and 27. But as this Court said in the SRAM 2 decision... Should this Court have properly read that prosecution history to have also read precision index down shifting into the claims? That was a question that was raised in the court declined to do so. 82 had taken the position in the earlier appeal that, looking at the prosecution history as a whole, including the third re-examination, the claim should be limited to precision index shifting. However, this court declined to do so. I should also add that the relevant actions of the PTO in the third re-examination occurred after the district court had been divested of jurisdiction over the case. The notice of appeal was filed in April 2007, and only after the notice of appeal was filed did the first office action issue, did the interviews between SRAM and the examiner occur, and it was just before oral argument in this case that the PTO finally allowed claim 16 on the erroneous basis of its misconstruction of the claim. By precision index down shifting, we mean one gear per click, right? Is that what that essentially means? That's correct. When you achieve the click, your chain will be in place? That is correct, Your Honor. The device disclosed in the Japanese reference performs a series of indexed down shifts because the reference itself states that the device is used to shift the drive chain between several gears mounted on the drive wheel at page 4574 of the joint appendix. Alternatively, a first operating apparatus can be used to shift the drive chain between several gears mounted on the drive wheel. Thus, the device disclosed in the Japanese reference also anticipates claim 27. Because anticipation is dispositive of all issues in this appeal, and because the Japanese Unless this court has any other questions, I will reserve the balance of my time. Claim 27 talks about a series of, let me get the exact language, a series of indexed down shifts. Does that encompass the idea of precision index shifting? No, it does not, Your Honor. The specification of the 291 patent has many, many instances where it refers to precision index shifting or precision down shifts, and only in one instance, which is cited in my reply brief, does the specification refer to an indexed down shift when it is referring to a shifter of the prior art that had to be over shifted in order to be assured of a down shift. So you say, I take it, that an indexed down shift is nothing more than a down shift with a detent, or some other mark as to where to stop. This court said in SRAM 2, that is correct, this court said in SRAM 2 that an indexed shift actuator is a detent-based shifter. But not necessarily one in which all you have to do is go to the detent and not either go farther or take other measures. That, if you didn't have to do anything more than simply move to the detent, that would be a precision indexed down shift, I take it. That is correct. Let me, while I've got you, let me ask you one other question, if I could. Pertaining to the Foster reference, you say that several references in Foster take care of the hand grip element that has at various points been suggested to be missing from Foster. That is correct. Now, why aren't those references to grips that in fact move as opposed to being fixed on the handlebar? For several reasons. First... You know the references I'm talking to, you cited them in your brief. Yes. Okay. They are conventional hand grips and the usual cushion grips. And a bicyclist using hand grips that are not fixed to the handlebars would be out of control in riding the bicycle. Well, but they're pictures. If you look at figures on sheet 4 and sheet 5 of Foster, you have pictures of things that look like hand grips that are twistable. That's correct. And I've ridden bicycles that have twistable hand grips, and they're fine, right? I mean, you probably have too. That is correct. Right. So you don't lose control simply because the hand grip is twistable. That is correct. Okay. Have you gone uphill? Downhill? I don't like them. Go ahead. At the bottom of column 8 and at the top of column 9 of the Foster patent, the patent distinguishes between the rotatable hand grip of the end-mounted embodiment of the shifter in the Foster reference. It distinguishes that from the conventional hand grip or compares it to the conventional hand grip on the end of a handlebar, which is engaged to the handlebar according to the specification at the bottom of column 8. Well, okay, but the question is, is Foster disclosing a device that incorporates the fixed hand grip, or is it only disclosing a device that uses the rotatable hand grip? Oh, it discloses an embodiment that can be mounted in the center of a handlebar or in an intermediate zone between the center and the end of the handlebar. Well, but I'm looking for something that says fixed hand grip with, and then the rest of the device in Foster. The word fixed does not appear in Foster. Right. Can you infer fixed hand grip in connection with the rest of the shifting device? You can, Your Honor, because... That is in the word conventional. A conventional hand grip is a hand grip that is affixed to the handlebar. As this Court said in the Saram 2 opinion, the fixed hand grip of Claim 16 refers to conventional hand grips. In Foster, what's the best reference that you've got that tells me that, contrary to the arguments that have been flowing through this case at various points, that Foster does in fact disclose a fixed hand grip in connection with the shift actuator? That is, I think, at the top of column 6, Your Honor, because the specification says that the embodiment may be equally, it may be easily and cheaply installed upon existing bicycles, and the present invention does not require the rider to grasp the handlebars in any novel or uncomfortable or awkward fashion, but permits freedom to grip the same in any manner that may be desired, whether at the outer ends or in the center or in intermediate zones and yet be able to effectuate gear shifting. I don't hear anything about hand grips. The references to conventional hand grips that are outlined in the brief and that you made reference to infers that they are fixed. Okay. Thank you, Mr. Brady. Mr. Wall. May it please the Court. Three years and four days ago we came back and we had a decision in what we call Tram 2 in our briefs, and in that brief this Court, the same panel, decided that it had to be sent back to the District Court because the question was asked to invalidate Claim 16 based upon the foster reference and the Japanese reference, and this panel sent it back because of the unclear record before you, the indeterminate stipulations of the parties, and the factual nature of the anticipation issue. This Court concluded it could not declare Claim 16 invalid. You send it back to the District Court. And what was added on the record in the District Court and what was added with respect to 82's proposition that the foster reference, the Japanese reference, invalidates it, was nothing, Your Honor. There was no new testimony. There was no new evidence. There was nothing additional on the record. With respect to each of these references, this consists entirely of attorney argument. There is not any evidence on the record of anyone skilled in the art, the people skilled in the art, that have looked at all these references over the years, all the people in the PTO, the multiple patent examiners that looked at it in the reexamination, the expert Dr. Sturgis who looked at it, all those people who were skilled in the art, the internal people, the engineers at Tram that testified, concluded that those do not contain the limitations of Claim 16 or Claim 27. When you send it back... But they do that apparently by reading precision index downshifting into the claim. Is that correct? That's not correct, Your Honor. That's not correct. I can deal with each of these separately. First of all, with respect to... What then is not found in the Japanese reference? What's not found, Your Honor, is taking up substantially all the cumulative loss motion. How else would it shift? Your Honor, when we made it, it didn't shift. When we got the declaration of the person who invented it and said it was just a design model, they said they never made a working model of it, so it didn't shift. So that's number one. That's the only evidence before the Court of this being shifted. It's a method claim. They didn't put this on a bicycle with a derailleur system and show that it could shift. They didn't do it. It's not a Japanese patent. It's a Japanese reference that wasn't made into a patent. And they did not produce any evidence that showed that it could do that. In fact, the people that did look at it said that it wouldn't do it. We made it. We made a model of it. And it wouldn't do it. Why? Because it did not have a method, a mechanism, for taking up cumulative loss motion. How would you affect the movement of the derailleur if the loss motion, whatever loss motion was there, wasn't taken up? Well, it depends on how you set up your system, Your Honor. I mean, there's many different types of cumulative loss motion, and that's really a critical point, Your Honor. The idea of what cumulative loss motion is, 82's counsel wants to argue it's the simple thing. Everyone knows what it is. But in fact, the parties in the first case that looked at this, the Court of Appeals, the Sunrace case, the parties that were before Sunrace and Schramm agreed to a claim construction of what cumulative loss motion is. Very different than what the court in Sunrace generally described what cumulative loss motion is. The reason is when you describe a patent at the beginning of your opinions, when the issue's not before it, there wasn't a claim construction issue of cumulative loss motion before the court. You don't do it in terms of you're just making a general statement. In Schramm 2, you describe it in a different manner. The same thing for precision index shifting or index shifting. You described it differently in Sunrace, and you described it differently in 82, in the Schramm 2. Not because there was a different issue before you, but because you were just describing it generally for it. What it's not, Your Honor, we know that cumulative loss motion includes many types of things, and if you look at the 291, it describes the different methods of it in column 19, in column 21, in column 22, in column 23. It includes wobble type, housing, cable variances, stretchable nature of it, the differences in different derailleur mechanisms and return spring variances. It is not a simple idea of, you know, it's loose and then you pull it taut and that's it. Well, we've already crossed that bridge, have we not, in Schramm 2? We said claim 16 only recites a method of shifting wherein first all of the cumulative loss motion is taken up, and second the bicycle chain moves between destination and three wheels. Brock, all claim 16 requires is a method that takes up loss motion in a bicycle shifting mechanism and then moves the derailleur of that mechanism from one sprocket to another. And I agree that's the wording of Schramm 2, Your Honor, but what you didn't say in there is all it requires is you left out the word, the court did, cumulative loss motion, and if we look at claim 16... Well, maybe that was not inadvertent. Well, I can't imagine that it was, Your Honor, because... That was not advertent. Right. I can't imagine that it was, Your Honor, because the idea of what that is, I mean, if you look at the Sun Race decision, which talked about the same thing, it had a general definition of cumulative loss motion, which was slightly different. I mean, the problem with this case, it seems to me, is that the parties for years have been trying to inject into this patent more than what those claims say. And I think people reading the record of this litigation would be astounded to see all of the nuanced meanings given to words like cumulative loss motion or precision index downshifting. I think what the court has tried to do, and I think what the record reflects, is what the claims said. And I simply think you're arguing the case you would like to have rather than the case you do. Well, Your Honor, there's no question that Claim 16, as a part of the method claim, says that you have to take up substantially all the cumulative loss motion. That's an element of the claim. That's not something put into it by a different lawyer. That's an element of the claim. And we've interpreted that. Well, Your Honor, you haven't interpreted that in terms of that doesn't mean anything. What was before the court in Tram 2 was whether or not Claim 16 described a method of precise index shifting or whether it could apply to anything else other than index shifting. And the court concluded it could apply to either or. What I think is the error here, Your Honor, is the idea of counsel trying to come in and argue that something that revolutionized the way people shifted on bicycles is something very simple. Everybody understands it's a really simple thing. Before 1988, Your Honor, there wasn't any twist shifters that worked on derailleurs anywhere. You can't walk down the streets of Washington or any city in this country and not see virtually every bicycle that has a twist shifter on it that has handlebars that goes across it. That was because of this invention. And what came from that is copying, obviously, from people who worked at a licensee of SRAM. And then to come in and say that, oh, this is nothing, nobody understands this. The USPTO... I don't think anybody is discrediting this invention. In fact, I think this is quite a significant invention and I think quite intriguing, the idea that was presented in this patent. And there are a lot of claims that I think clearly cover that. The problem is with respect to the breadth of Claim 16 and Claim 27. Well, Your Honor, I'll address both of those. The USPTO, all the examiners have looked at it over the years of the reexamination they held. The prior art fails to anticipate or render obvious the method of performing downshifting vents as set forth in Claims 16 through 19 and 27, in particular including rotating the actuator a sufficient amount to take up the accumulated lost motion in the derailleur system and rotating the actuator a further amount to substantially move the chain from the center of the engaging sprocket to the center of the destination sprocket to perform the gear shifting. It should be noted that the prior art fails to address explicitly or implicitly the idea of rotating a shift actuator on the handle of a bicycle for taking up accumulated lost motion in the derailleur system. One may argue that it is inherent in a derailleur system to take up lost motion during gear shifting. However, the prior art fails to disclose or provide any means that would enable one of ordinary skill in the art to assert such inherency. But that's because the Patent Office was viewing this from the perspective of precision index shifting. All right. Well, Your Honor, if I take that proposition, which I think at 16, I think they looked at it as describing it. Claim 27 specifically does describe it. So why would that be an error for them to look at Claim 27 as describing index shifting when it specifically includes that limitation? And when the last time we were here, counsel for 82 argued that 16 didn't include it because 27 did. It's the exact same thing. Just look at... If you want to ignore Claim 16, look at Claim 27, which includes that index limitation. They didn't say in the PTO that the reason the prior art didn't have it is because it's precise index shifting. It doesn't say that. It says it's because they don't inherently... It's not inherent, and they don't explicitly or implicitly include it, Your Honor. It's nowhere in those systems. Those are hundreds of things. Now, listen. But how else... This was where Judge Lynn started us out, but I think all of us have spent a lot of time on bicycles. We all recognize the only way you can shift is by taking up the loss motion. No, there's other ways you can shift, Your Honor. There's many other ways you can shift. Internal gear hubs, you don't have to have internal loss motion. It doesn't matter because you're just pulling and pushing planetary gears against each other. There were systems that had hard rods. There's electromagnetic systems that could do it. But a cable system, the nature of these cables is that they have some give and take in them. They have some stretch in them. That would be part, at least, of cumulative loss motion, right? Well, it's part of it, Your Honor. Yeah, okay. And you have to take it up before you start putting pressure on the shifting mechanism, right? Well, 82's expert, Dr. Caulfield, who is... That's correct, right? Well, Your Honor, I believe that you have to specifically take it up in order to affect a shift. And in order to affect an index shift, you have to do it. But Dr. Caulfield, 82's expert, someone who they claim was skilled in the art, said that 82 shifters do not take up a cumulative loss motion. It doesn't do it because with a pretension cable, it is taken out of the system. That's why, Your Honor, what is the evidence? What's the evidence that's different today than it was three years ago? There is no testimony that was added by 82 of anyone skilled in the art that Foster or the Japanese reference include all these limitations. None, Your Honor. There is none. All the experts that testified, the reference that he gave to Dr. Sturgis said that they did not have it. Well, they don't explicitly include it. We're talking about a classic inherency case. By definition, that means they don't discuss it, but it must be present, necessarily. Then they would have had someone who was skilled in the art that would come in and testify and say that they didn't have it. They did not have it, Your Honor. The reason they didn't do it is because their experts said that their device didn't do it. Our experts testified that it's not inherent. The PTO concluded that it is not inherent. And whether you want to include, say, well, that's because of precise and index shifting, well, then claim 27 is valid. They didn't have it because it's not there, Your Honor. You can't say inherency. It's got to happen all the time. Not occasionally, not maybe, not by happenstance. There aren't any. If this was in all rotary shifters, it's everything in the world. Are you arguing that Japanese reference was not enabling? Yes, Your Honor. Absolutely. We put it together. It's not a patent. It's a Japanese publication, but we put it together. The declaration of the inventor said that it didn't work. It was a design. So absolutely I'm arguing that it's not because we did it. Now, if this is inherent, if everyone does it, if there's lots of things out there, where is the prior art? Why didn't they come up with someone who was skilled in the art? They brought one of their witnesses, their engineer over from Taiwan who testified at a hearing between the last time we were here and now. He didn't say that it's in those pieces of prior art. No one did. The only evidence was our experts saying I've looked at it, I've considered it, the court's decision. It's not there. It's not there. It's not inherent in it. You say, when you keep saying it, let's make sure we know what the it is here. You're saying that taking up cumulative lost motion, as in the, I think you and I agreed, that at least includes the looseness in a cable, in a cable-driven system, that taking up cumulative lost motion, you say, is not inherent in a shifting system in which the actuator is twisted ultimately to pull the cable so that the cable pulls the gear onto the next bracket. That's what the PTO concluded and that's what I think is correct. I think the 291, if you look at the 291 patent, specifically in columns 19 and 21 and 22 and even 23, it goes through and lists what cumulative lost motion is and how it's different and how it goes through different patterns. It has many sources. Many sources. But all of those sources end up manifesting themselves, it seems to me, at the point at which you are beginning to twist. So it's cumulative in that it may be because the cable is loose, it may be because the cable is expansible, it may be because there's something at the end of the cable that has some give to it, springs and so forth, as you mentioned before. But at the end, it's going to be half an inch or whatever else of cumulative lost motion that attaches to the actuator. Correct? Well, it's much less... Yes or no? Well, yes, Your Honor. It's much less than half an inch, but it is. It is absolutely... It's all those things that are combined. Right. And you don't care where they come from. All we care about for purposes of this claim is that there is cumulative lost motion at the end of some amount and that it gets taken up. Right? Yes, Your Honor. That it is there and that it is taken up. But there's a method for doing it. There is no... In all that prior art, there is no mechanism, Your Honor. But the 16 doesn't talk about a method for doing it. It just says you take up the cumulative lost motion. That's right because the preferred embodiment showed a mechanism for doing it. But that preferred embodiment is not a limitation of the claim. So the claim reads on anything that takes up the cumulative lost motion. Right? Your Honor, no. It reads on twist shifters inboard of the outside end of the handlebar that are fixed of all those physical limitations and that actually do complete a shift. And there's no evidence of someone skilled in the art that either Foster or JP, the Japanese referent, have those limitations. There was nothing added between last time and this time and therefore it would be... The idea that... I thought the notion was that Foster's only... The only thing missing from Foster was the fixed hand grip. Well, Your Honor, clearly there is no fixed hand grip in the reference that I think you understand that there is no fixed hand grip. We didn't go through that more closely with respect to finding that it actually did shift. The PTO and our expert concluded that it doesn't mention or include  for taking up cumulative loss motion. Thank you, Your Honor. Thank you, Mr. Walsh. Mr. Brady, you have a little more than two minutes remaining. Thank you, Your Honor. This is a classic nose of wax case in which SRAM was able to get a very broad claim allowed by the patent office which it... Well, both of you have been pushing the nose around pretty far. It seems to me that this is not a case of one party having taken inconsistent positions because you're both all over the lot. You're taking positions with respect to infringement in which you try to add limitations to the claim and with respect to invalidity you take limitations away. Now we're in the position that the claim doesn't have all these limitations but that hasn't always been your position. That is true, Your Honor, and that is because of the prosecution history. The... It is clear that the PTO allowed Claim 16 because it viewed it as limited to the specific mechanism disclosed in the specification. And it was only after the Sunrace case and after SRAM 2 where this court said Claim 16 will be limited according to its plain language that 82 has taken the position consistently that the claim is invalid as anticipated. There is no issue of material fact but that the Japanese reference clearly and convincingly anticipates both Claim 16 and Claim 27. And for that reason the judgment of the District Court must be reversed. Thank you. That concludes our day.